IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Anthony Gagliani, Individually and as Personal Representative of the Estate of Stephen Walter Gagliani, | C/A. No. 3:20-3737-CMC-SVH |
| Plaintiff | |
| v. | |
| Lexington County Sheriff's Department, South Carolina Law Enforcement Division, Deputy Brandon Kinder, Deputy Jason Wilkes, Deputy Lance Thomas, and State Constable Lawrence Markey, | Order |
| Defendants. | |

Plaintiff Anthony Gagliani ("Plaintiff"), individually and as personal representative of the estate of Stephen Walker Gagliani ("Gagliani" or "Decedent") filed this action in the Court of Common Pleas for Richland County, South Carolina, alleging violations of Decedent's constitutional rights and state law claims against Lexington County Sheriff's Department ("LCSD"), the South Carolina Law Enforcement Division ("SLED"), Deputy Brandon Kinder, Deputy Jason Wilkes, State Constable Lawrence Markey, and Deputy Lance Thomas. The case was removed to this court on October 23, 2020. ECF No. 1.[1] An Amended Complaint was filed May 26, 2021. ECF No. 23. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), D.S.C., the matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings.

---

[1] Plaintiff's claims against County of Lexington, South Carolina, were dismissed. ECF No. 17.

This matter is before the court on Defendants' Motions for Summary Judgment.  ECF Nos. 39 (Motion by Defendant SLED), 40 (Motion by Defendants LCSD, Kinder, Wilkes, Markey, and Thomas, collectively, "Sheriff Defendants").  Plaintiff responded in opposition to both motions (ECF Nos. 46, 47), and Defendants replied (ECF Nos. 48, 51).  The court notes Defendants Kinder, Wilkes, and Markey, named in Plaintiff's § 1983 claim for excessive force regarding the chokehold/weight on neck of Decedent, did not move for summary judgment as to that claim.

On February 18, 2022, the Magistrate Judge issued a Report and Recommendation ("Report") recommending SLED's motion for summary judgment be granted, and the motion of the Sheriff Defendants be granted in part and denied in part.  ECF No. 52. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.  Plaintiff filed objections to the Report (ECF No. 55), as did Defendants Kinder, Markey, and Wilkes (ECF No. 56). Replies were filed by Defendants LCSD, Kinder, Wilkes, and Markey (ECF No. 59) and by SLED (ECF No. 60).  The motions are now ripe for resolution.

### 1. **Standard**

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).  The court reviews only for clear error in the absence of an objection.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed

2

objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 568 (4th Cir. 2015). While all justifiable inferences must be drawn in favor of the non-movant, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986), a non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Sandlands C&D LLC v. County of Horry*, 737 F.3d 45, 54 (4th Cir. 2013). "To survive summary judgment, there must be evidence on which the jury could reasonably find for the nonmovant." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); see also *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) ("The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find.").

Rule 56(c)(1) provides as follows:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or
>
> (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)

### 2. **Background**[2]

At approximately 6:28 am on September 18, 2019, law enforcement received a call for a non-urgent welfare check on a shirtless man acting erratically in a neighborhood roadway, later identified as Stephen Walter Gagliani (referred to in this background section as "Gagliani"). ECF No. 47-1, Lexington County Communications Center Event Report at 7. The man was described as "screaming down the road," attacking cars, punching his chest, and "screaming like he is Jesus," and yelling "shoot me." *Id.* Defendants Kinder, an LCSD deputy sheriff, and Markey, a State Constable operating under the direction of SLED and volunteering with LCSD, were the first officers to respond. Upon arrival, they learned Gagliani had entered his residence at 204 Crestridge Drive. Deputy Kinder knocked on the side of the trailer, at which time Gagliani opened the door and walked down the steps into the yard. Kinder then questioned Gagliani, who spoke quietly but failed to answer Kinder's questions about what had occurred earlier. Kinder noted Gagliani's eyes were "pinpoint." Gagliani, shirtless, stated he was preparing to go to work. ECF No. 47-2, Kinder

---

[2] The facts are taken in the light favorable to the non-moving party, Plaintiff, where support is found in the record.

dep. at 101:13-14, 106:15-115:1; ECF No. 40-2, Kinder body camera at 10:44:33-10:46:24[3]. LCSD deputy sheriff Wilkes[4] arrived on the scene during Kinder's questioning of Gagliani, and Kinder then walked away to talk to neighbors and "see what had happened before we got there." ECF No. 47-2, Kinder dep. at 124:1-8; *see also* ECF No. 40-2, Kinder body camera at 10:46:24. Wilkes asked Gagliani for identification, but Gagliani asked "what ID?" without producing identification. ECF No. 47-3, Wilkes dep. at 108:4-109:24; ECF No. 40-3, Wilkes body camera at 10:46:25-42. Wilkes testified he believed Gagliani was giving him the "thousand-yard stare" and made the decision to detain him until Emergency Medical Services ("EMS") could arrive.  ECF No. 47-3, Wilkes dep. at 127:12-22.  Wilkes, however, did not inform Gagliani he was to be detained, but instead suddenly grabbed Gagliani's left arm, ordering him to place his hands behind his back. *Id.* at 142:20-143:5.

As Wilkes snatched Gagliani's left arm, Kinder approached and grabbed Gagliani's right arm and ordered him to stop resisting. ECF No. 40-2, Kinder body camera at 10:46:45.[5] Gagliani attempted to pull away. Kinder testified the officers needed to take Gagliani to the ground "to try to better control him" and he therefore told Wilkes of his plan.  ECF No. 40-5, Kinder dep. at 134:24-135:6; ECF No. 40-3, Wilkes body camera at 10:46:50-56. Kinder, Wilkes, and Gagliani all ended up on the ground, with Gagliani on his stomach face down, and Kinder and Wilkes on

---

[3] The body cameras of Kinder, Wilkes, and Thomas from this date show incorrect times, with a time stamp beginning at 10:45 am instead of the correct time, 6:45 am.

[4] Wilkes supervised Kinder, Markey, and Thomas.  ECF No. 40-9, Wilkes dep. at 146:6-13.

[5] Here, Kinder's body camera cuts out for about a minute. When it was reactivated, it was on the ground and showed Gagliani lying on the ground with a deputy standing over him. ECF No. 40-2, Kinder body camera at 10:47:27.

either side of him, as Kinder attempted to move Gagliani's arm behind him.[6]  ECF No. 40-5, Kinder dep. at 135:20-136:20. Kinder testified Gagliani had not done anything to warrant arrest, but officers were attempting to "get him detained and the scene secured so medical professionals could come and evaluate him." *Id.* at 137:7-12.  Gagliani got up on all fours on the ground and Kinder "applied pressure to the back of the subject's head to try and keep him down on all fours and not get up any further.  And then I pulled my taser from my - - my duty belt." *Id.* at 137:20-23.

Body camera audio reveals over the next minute or so, officers warned Gagliani they would tase him if he failed to put his hands behind his head. ECF No. 40-3, Wilkes body camera at 10:47:07-30; ECF No. 40-2, Kinder body camera at 10:47:30-57.  Gagliani told officers to "go for it."  ECF No. 40-2, Kinder body camera at 10:47:58 – 10:48:10.  Kinder fired his taser twice, and Gagliani screamed each time. *Id.* at 10:48:43 – 10:48:46.  Officers yelled "roll over" and "get down," or Gagliani was "going to get hit again." *Id.* at 10:49:19.  An officer told Gagliani "we are trying to help you," to which Gagliani responded "no you aren't." *Id.* at 10:49:34-37. Wilkes then stated Gagliani was under arrest for public disorderly conduct. *Id.* at 10:49:44.[7] Gagliani then slowly stood up, with multiple officers yelling at him to get down, and Wilkes deployed his taser as Gagliani stood, arms by his side, swaying slightly, and yelling in response to the taser deployment. *Id.* at 10:49:54 – 10:50:35.   An officer then yelled "you are under arrest" and "get

---

[6] At this point in the struggle, Wilkes' body camera fell to the ground and only audio is available from that camera for the remainder of the interaction.  ECF No. 40-3, Wilkes body camera at 10:46:57.

[7] Wilkes later testified he "spoke out of turn" by saying "public disorderly conduct," as there was no basis to arrest Gagliani at that point.  ECF No. 47-3 at 138:18 – 139:7.

down on the ground right now." *Id.* at 10:50:01 – 10:50:16. Wilkes then ordered Markey to "hit him" with pepper spray, or OC (oleoresin capsicum) spray. *Id.* at 10:50:17.  Markey later stated he used an entire can of OC spray on Gagliani's eyes and face.  ECF No. 40-8 at 5.  Wilkes thereafter deployed his taser again, totaling four taser deployments to Gagliani.  ECF No. 40-2, Kinder body camera at 10:50:30.

For a short period of time, officers are heard repeatedly yelling for Gagliani to get on the ground and that he is under arrest, although there are no sounds of fighting.  Then Kinder's body camera records the sounds of a struggle, someone says, "get that handcuff on right now," and someone says, "choke him, choke him." *Id.* at 10:51:30-35.  According to a neighbor who witnessed the struggle, either Wilkes or Kinder "snuck a chokehold takedown" on Gagliani, placing his arm around Gagliani's neck and bringing Gagliani to the ground. ECF No. 47-10 at 39:23-40:1; 42:1-22.  During the attempts to control Gagliani, Wilkes punched Gagliani in the head, fracturing his own hand.  The scuffle continued, with officers yelling "stop fighting," and "you are under arrest."  ECF No. 40-2, Kinder body camera at 10:52:20-27.

LCSD deputy sheriff Thomas then arrived on the scene, responding to a call from Wilkes for backup.  Thomas' body camera as he approaches shows Gagliani on the ground on his back, with Kinder and Wilkes on either side of him, struggling with his arms, and Markey standing at Gagliani's feet holding the end of  two pair of handcuffs locked together. ECF No. 40-4, Thomas body camera at 10:54:20 – 10:55:05. Thomas then attempts to assist with subduing Gagliani, who was breathing heavily and calling out for help. *Id.* at 10:54:35-45. Thomas testified he pushed Gagliani's head to the side and placed his hand or knee into Gagliani's arm.  ECF No. 40-11, Thomas dep. at 63:2-6 – 65:19.  Gurgling noises and loud, harsh breathing sounds are heard from Gagliani. *Id.* at 10:55:28-32. The officers decide "we gotta flip him over," noting Gagliani has

been hit with taser and pepper spray. *Id.* at 10:55:33-50. Someone orders Gagliani to "lay down," the last command given to him, and Kinder yells "you calmin' down?" *Id.* at 10:56:38. Gagliani then appears motionless, with officers continuing to hold him down, until they realize he is nonresponsive, with Thomas noting "that or he's acting." *Id.* at 10:56:40. Wilkes states "Hold on a minute, I've got my arm on his neck." *Id.* at 10:56:35. Then the following is heard on the video: "Is he still – is he still breathing? Get off his neck. Is he breathing? I don't think so. He's not breathing? Do CPR." *Id.* at 10:57:20-35.

Kinder then begins CPR on Gagliani. Officers note "he is foamin' at the mouth" and attempt to rouse him while doing CPR. *Id.* at 10:57:40-10:58:10. Thomas administers Narcan twice, but Gagliani remains unresponsive. *Id.* at 10:59:14-11:00:48. Multiple officers take turns administering CPR until EMS personnel arrive. *Id.* Gagliani never regained consciousness, remaining on a ventilator until he was taken off life support six days later, September 24, 2019. His death was determined to be the result of an "undetermined cause while in custody of law enforcement." ECF No. 40-13 at 20. His blood was tested and was negative during toxicological analysis, though there was an insufficient amount to test for synthetic cannabinoid. *Id.*

Anthony Gagliani, Stephen's father, filed this action on his own behalf and as personal representative of his son's estate, against Lexington County Sheriff's Department, South Carolina Law Enforcement Division, Deputy Brandon Kinder, Deputy Jason Wilkes, Deputy Lance Thomas, and State Constable Lawrence Markey.[8] The Amended Complaint includes the following causes of action: (1) grossly negligent hiring, training, and employment pursuant to the South

---

[8] Collectively, Defendants Kinder, Wilkes, Thomas, and Markey may be referred to herein as the "individual Defendants."

Carolina Tort Claims Act ("SCTCA") against Defendants LCSD and SLED; (2) grossly negligent failure to acquire, maintain, furnish, and utilize properly-functioning equipment under the SCTCA against LCSD, SLED, Kinder, Wilkes, and Markey; (3) deliberate indifference pursuant to 42 U.S.C. § 1983 against LCSD and SLED; (4) improper search and seizure and excessive force and due process violations under § 1983 against Kinder, Wilkes, and Markey; (5) gross negligence - wrongful death and survival under the SCTCA against LCSD, SLED, Kinder, Wilkes, and Markey; (6) grossly negligent provision of medical and lifesaving care under the SCTCA against LCSD, SLED, Kinder, Wilkes, and Markey; and (7) deliberate indifference - violation of the Eighth and Fourteenth Amendments pursuant to § 1983 against Kinder, Wilkes, and Markey. ECF No. 23.

### 3.  <u>Discussion</u>

The Magistrate Judge's Report recommends granting SLED's motion for summary judgment in its entirety and dismissing the case against it, and granting in part and denying in part the motion for summary judgment of LCSD and the individual Defendants. ECF No. 52. Specifically as to the Sheriff Defendants' motion, the Report recommends dismissing Plaintiff's federal claims against LCSD and the individual Defendants in their official capacities, the Fourth Amendment excessive force claim for placing weight on Decedent's neck against Markey only, the Fourteenth Amendment deliberate indifference claim, and the SCTCA claims except for wrongful death/survival as to LCSD.

Plaintiff objects to specific portions of the Report only; namely, to the dismissal of Defendant Markey from the excessive force weight-on-neck portion of that claim, and to the dismissal of SLED as to the grossly negligent hiring, training, and supervision of Markey and wrongful death/survival causes of action.  ECF No. 55.  Plaintiff alleges there is a genuine issue of material fact as to whether Markey was involved in the chokehold of Decedent or placed weight

9

on Decedent's neck while he was on the ground.  *Id*. at 3-5. As to the SCTCA negligent hiring, training, and supervision claim against SLED, Plaintiff contends SLED was aware of the need to exercise control over Defendant's Markey's participation in the State Constable Program and the need to suspend non-compliant constables, but was unable to demonstrate Markey's compliance with the mental illness training requirement. *Id.* at 7.  Finally, Plaintiff submits there is record evidence, namely, the expert opinion of Dr. Jeff Noble, establishing a causal link between this uncompleted training, the unpermitted hours worked, and Decedent's death so as to permit the wrongful death claim against SLED to proceed to trial.  *Id.* at 8.

Individual Defendants Kinder, Wilkes, and Markey also filed objections.  ECF No. 56. They claim the Magistrate Judge erred in denying summary judgment as to the Fourth Cause of Action, alleging unreasonable search and seizure and excessive force, and in finding the officers were not entitled to qualified immunity.  These Defendants also filed a reply in opposition to Plaintiff's objections, claiming the arguments regarding Markey's involvement in the "chokehold takedown" are newly raised and therefore not properly before the court. ECF No. 59.  They further argue the video evidence shows Markey was standing when Decedent was on the ground, which contradicts the allegation Markey placed weight on Decedent's neck while he was on the ground. *Id.* at 5.

In addition, SLED filed a reply in opposition to Plaintiff's objections, contending no evidence supports one allegedly missed class on "Handling the Mentally Ill" led to Decedent's death.  ECF No. 60 at 4.  It also argues Plaintiff's argument regarding proximate cause is newly raised in Plaintiff's objections and therefore inappropriate, and also should be overruled on the merits.  *Id.* at 4-5.

*a.* *SLED's Summary Judgment Motion*

The Magistrate Judge recommended the court grant SLED's motion for summary judgment in its entirety. Plaintiff objected only to dismissal of the SCTCA claims against SLED for negligent hiring, training, and employment, and wrongful death. Those portions of the Report will be reviewed *de novo*. The balance of the Report regarding SLED's motion for summary judgment has been reviewed for clear error and, finding none, the court adopts the Report regarding the claims against SLED for gross negligence as to maintenance and use of equipment, gross negligence for provision of medical care, and deliberate indifference under § 1983. Summary judgment is appropriate as to those claims.

i.   Negligent hiring, training, and employment

Turning to the claim against SLED for negligent hiring, training, and employment, the court agrees with the Report Plaintiff has failed to produce sufficient, specific evidence that SLED knew of a need to exercise control over Defendant Markey and failed to do so. Plaintiff points to general policies and procedures, as well as the "expressed intent of the Governor and General Assembly in enacting training requirements for law enforcement members," to show that "allowing inadequately trained law enforcement members to participate in the administration of enforcement activities creates a substantial and unreasonable risk of harm to the mentally ill, as well as to individuals within South Carolina." ECF No. 55 at 6. However, these general policies and laws do not establish knowledge of a need to control Defendant Markey specifically. South Carolina law recognizes a cause of action for negligent employment when the plaintiff is able to demonstrate an employee had "some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 451 (S.C. Ct. App. 2005). Here, Plaintiff points to no evidence showing Defendant Markey had

11

committed a prior act that put SLED on notice of the need to exercise control over him specifically in order to avoid harm to others, including Decedent.

Plaintiff also asserts SLED has not produced evidence proving Markey, as SLED's employee, completed training for interactions with mentally ill subjects, and thus should have been removed from the State Constable program. SLED has produced evidence showing Markey obtained his Advanced State Constable certification on April 1, 2015, prior to the effective date of the current version of the South Carolina State Constable Program Policies and Procedures that requires the "Handling the Mentally Ill" class. Further, and more importantly, Plaintiff has failed to introduce evidence that Markey's failure to take "Handling the Mentally Ill" led to any specific action by Markey in the incident that led to Decedent's death.

In his objections, Plaintiff argues the expert opinion of Dr. Jeff Noble indicates "any reasonable officer would have perceived that Plaintiff's decedent was undergoing a mental health crisis." ECF No. 55 at 9 (citing ECF No. 27-1). However, Plaintiff fails to show, beyond a conclusory statement, that such failure was related to Markey's lack of training related to mentally ill persons **and** that such failure therefore led to Decedent's death. Plaintiff also cites the Expert Report of Jamie Upshaw Downs (ECF No. 27-3), asserting "Dr. Upshaw Downs specifically cites actions taken by Defendant Markey as having contributed to the death of Plaintiff's decedent." ECF No. 55 at 8. That expert report does mention oleoresin capsicum deployment as one element that "accomplished multiple physiologic derangements and accompanying metabolic derangements in the subject," although the court notes the report does not mention Markey by name or separate out what actions by which officer(s) led to Decedent's death. ECF No. 27-3 at 16.

12

What is missing here is the evidentiary link between the allegedly required but missing class in "Handling the Mentally Ill," the deployment of OC spray and/or other actions taken by Markey, and Decedent's death. In other words, Plaintiff has failed to show that if Markey had taken the class on mental illness, he would not have deployed OC spray or taken other actions during this incident, and without those actions Decedent would not have stopped breathing and ultimately died. The court therefore overrules Plaintiff's objection and grants summary judgment as to the claim against SLED for negligent hiring, training, and employment.

### ii.   Wrongful Death

Plaintiff's wrongful death claim under the SCTCA against SLED fails for the same reasons as the negligent hiring, training, and employment claim: there is no nexus between SLED's alleged conduct in failing to require Markey attend the class on mental illness and the death of Decedent. Plaintiff's objections rely on the same arguments advanced above regarding causation, which have been reviewed by the court. Because the plaintiff in a wrongful death action under the SCTCA must establish causation, by showing the negligence of the defendant was a cause of the death of the decedent, *Land v. Green Tree Servicing, LLC,* 140 F. Supp. 3d 539, 545 (D.S.C. 2015), Plaintiff's wrongful death claim against SLED cannot survive summary judgment.

### iii.   Conclusion as to SLED

As the court has overruled Plaintiff's objections to the Report's recommendations as to the claims against SLED, summary judgment is appropriate for all claims against SLED, and they are dismissed with prejudice. SLED's motion (ECF No. 39) is therefore granted in full, and it is dismissed as a party.

13

b. _Individual Defendants' Summary Judgment Motion_

Objections have been raised to the Report's findings and recommendation regarding Plaintiff's § 1983 claim, the Fourth Cause of Action, for unreasonable search and seizure and excessive force against the individual Defendants. The briefing on the motion for summary judgment and the Report divided that claim into several discrete events: (1) Wilkes' initial seizure of Decedent, (2) Kinder's two taser deployments; (3) Wilkes' two taser deployments, (4) Markey's use of pepper spray, (5) Wilkes' chokehold takedown, and (6) weight placed on Decedent's neck.[9] The Magistrate Judge recommended denying summary judgment as to all portions of the claim: the initial seizure of Decedent by Wilkes; repeated use of taser by Kinder and Wilkes, Markey's use of pepper spray; and the chokehold takedown and weight placed on Decedent's neck by Kinder and/or Wilkes. The Report recommends granting summary judgment for Markey only as to the weight placed on Decedent's neck, as it notes Markey is seen on body camera video at Decedent's feet at the time of this portion of the incident, not near his head or neck.  The Report also recommends granting summary judgment as to the deliberate indifference claim against the individual Defendants, and that the state law claims against the individual Defendants be dismissed as they are not proper parties under the SCTCA.

---

[9] The court notes, although Defendant Thomas is named in the caption of the Amended Complaint and mentioned throughout the factual recitation, he is not named in any Cause of Action. Specifically, he is not named in the Fourth Cause of Action, the § 1983 claim for improper search and seizure, excessive force and due process violations, or the Seventh Cause of Action, for deliberate indifference under § 1983.  ECF No. 23 at 14, 18.  As such, it appears Defendant Thomas, as an individual Defendant, should be granted summary judgment.  References to the "individual Defendants" in this portion of the Report therefore refer to Defendants Kinder, Markey, and Wilkes only.

14

Defendants Kinder, Wilkes, and Markey object to the Report's recommendations regarding the excessive force claim, specifically as it relates to use of the taser and OC spray.[10]  They further object to the recommendation they are not entitled to qualified immunity for their use of force.  Plaintiff objects to Markey being dismissed from the excessive force claim regarding the chokehold/weight on Decedent's neck.

i.  <u>Fourth Amendment Claim</u>

Defendants object to the Magistrate Judge's reliance on *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016).  They attempt to distinguish *Armstrong*, asserting the individual Defendants had no indication Decedent was suffering from mental illness; Decedent failed to submit to seizure; and was an "immediate danger" to officers that justified use of a taser and OC spray. Defendants also argue Decedent posed a threat to bystanders such that there were exigencies and danger involved, in contrast to *Armstrong*.

The court disagrees with the individual Defendants' attempts to distinguish *Armstrong*. While Decedent may have been somewhat more physical than Armstrong, the fact remains he was an unarmed, shoeless and shirtless man who was inside his home, came outside when Deputy Kinder knocked, stood quietly and presented no immediate threat to officers or bystanders, yet officers began grabbing his arms without explanation.  Decedent, like Armstrong, refused to comply with officer's instructions to put his hands behind his back or head, or get down on the ground.  Officers were unsuccessful in both cases in securing the subjects' hands, and as noted by officers, the tasings in *Armstrong* "actually increased Armstrong's resistance" – similar to

---

[10] These Defendants make no specific objection to the Report's finding their seizure of Gagliani violated the Fourth Amendment.  ECF No. 56.

Decedent here, on whom the tasings appeared unsuccessful in securing his compliance. Armstrong continued to kick at an officer after being tased, similar to Decedent who was resisting officers by failing to comply with their orders.

There is ample evidence from which a jury could find the individual Defendants' seizure of Decedent violated the Fourth Amendment. Although Defendants argue they "had no indication that Plaintiff's decedent was suffering from a mental illness" (ECF No. 56 at 2), Decedent posed no harm to the officers before they moved to seize him, and they decided to restrain him so he could be evaluated by EMS. The *Armstrong* court held "[w]here a seizure's sole justification is preventing harm to the subject of the seizure, the government has little interest in using force to effect the seizure." 810 F.3d at 901. The court agrees the *Graham* factors (*Graham v. Connor*, 490 U.S. 386, 388 (1989)) regarding the initial seizure favor Plaintiff.

A jury could also find the use of force in tasing Decedent four times and deploying an entire can of OC spray in his eyes and face was not constitutionally justified given the circumstances. The *Armstrong* court cited several examples in determining "[e]ven noncompliance with police directives and nonviolent physical resistance do not necessarily create 'a continuing threat to the officers' safety.'" *Id.* at 904 (citing *Meyers v. Baltimore County*, 713 F.3d 723, 733 (4th Cir. 2013)). For example, an arrestee pulling her arm away when a police officer grabs her without explanation does not justify use of a taser; neither does a refusal to be handcuffed when the subject is unarmed and there is little risk he could access a weapon. *Id.* Deployment of OC, or pepper spray, is treated similarly. *Id.* at 905. "At bottom, physical resistance is not synonymous with risk of immediate danger" required to justify use of force with a taser or OC spray. *Id.*

16

Defendants offer additional attempts to distinguish *Armstrong*, arguing the officers "reasonably believed that Plaintiff's decedent posed a threat to them and others." ECF No. 56 at 3. It does not appear to the court the unarmed Decedent's refusing to produce an ID posed a threat to trained police officers so as to justify his restraint, which led to use of a taser and OC spray. Nevertheless, the individual Defendants assert bystanders and children waiting for the school bus were present when the interaction with Decedent began, elevating the risk Decedent posed. Even assuming Decedent had previously acted erratically, when officers arrived he was no longer doing so and had returned inside his residence. The individual Defendants' objections regarding the Fourth Amendment claims and use of taser and OC spray are overruled. Summary judgment is denied as to the Fourth Cause of Action.

## ii. Qualified Immunity

The individual Defendants argue the

> constitutional right in question in the present case, defined with regard for defendants' particular . . . conduct is [plaintiff's decedent's] right not to be subject to tasing, taken to the ground, and sprayed with OC spray while offering repeated resistance to a lawful seizure, after being commanded to place his arms behind his back and quit resisting, and submit to an arrest. All while children and their guardians are waiting at a bus stop nearby.

ECF No. 56 at 4. Defendants "contrast this case with *Armstrong*;" however, the court finds this case is sufficiently analogous to *Armstrong* to put the individual Defendants on notice their conduct was unlawful. Although the *Armstrong* court held the officers in that case were entitled to qualified immunity because no case had held such conduct was unlawful, *Armstrong* served as notice of the instant Defendants' unlawful conduct. The court finds Decedent had a clearly established constitutional right to be free of the seizure and force exerted against him by the

individual Defendants, such that qualified immunity is not available to Defendants Kinder, Wilkes, and Markey.

### iii.   Weight on neck – Defendant Markey[11]

Finally, Plaintiff objects to the Report's recommendation to grant summary judgment to Defendant Markey only regarding the weight placed on Decedent's neck during the incident. Plaintiff posits the Report "may have conflated Defendant Thomas and Markey's respective involvements," and witness testimony indicates two younger officers and one "older officer with snow-white hair" were involved in the chokehold struggle. ECF No. 55 at 4.  Plaintiff also points to Dr. Erin Presnell's expert report, noting injuries to Decedent's neck. *Id.* at 5.  Defendant Markey disputes he was on the ground with Decedent and the two other officers, and argues Thomas' body camera footage shows Markey was standing at Decedent's feet when he was laying on the ground and thus Markey could not have put weight on Decedent's neck.

The court agrees with the Report Defendant Markey, the "older officer with snow-white hair," is standing at Decedent's feet when Defendant Thomas arrives on the scene and the other two officers, Kinder and Wilkes, are on the ground with Decedent.  ECF No. 40-4, Thomas body camera.  Markey is standing and holding one end of a pair of handcuffs while the other two officers struggle to get Decedent's arms and appear to be holding Decedent down and putting their weight on his back, neck, or upper body. *Id.* at 10:54:20 – 10:55:05. Markey then hands the end of the

---

[11] The Sheriffs' Defendants' Motion describes "Defendant Wilkes' alleged chokehold takedown of Plaintiff's Decedent." ECF No. 40-1. In his response in opposition to that motion, Plaintiff notes the "record establishes that Defendant Wilkes then executes a chokehold takedown." ECF No. 47 at 19. The Report similarly describes "Wilkes' chokehold takedown." Therefore, it appears to the court this objection is to the Report's conclusion on whether Markey was involved in the weight-on-neck portion of the excessive force claim, not the chokehold takedown from standing, which the parties appear to agree was done by Defendant Wilkes.

handcuffs he is holding to the recently arrived Defendant Thomas, and continues to stand down by Decedent's feet or even a bit farther away, against the police vehicle. *Id.* at 10:55:06 – 56:35. When one of the deputies on the ground says, "get off his neck," the video clearly shows an officer still standing down by Decedent's feet. *Id.* at 10:57:30. As no officers had changed positions, it is clear to the court this is still Defendant Markey, even though his hair is not visible.

As the video evidence shows Defendant Markey physically could not have placed weight on Decedent's neck due to his position, the court accepts the Magistrate Judge's recommendation to grant summary judgment on that portion of the § 1983 claim for excessive force (Fourth Cause of Action) as it relates to the weight on Decedent's neck against Defendant Markey only.

### iv.   Conclusion as to Individual Defendants

The court has reviewed *de novo* the portions of the Report to which objections were lodged. The court agrees with the Report, overrules the objections, and hereby adopts the Report by reference.  Plaintiff's § 1983 seizure and excessive force claim (Fourth Cause of Action) survives summary judgment except for the weight placed on Decedent's neck claim against Defendant Markey, as Plaintiff has demonstrated constitutional violations and qualified immunity is not appropriate.[12]

The issues to which objections were not lodged are reviewed for clear error and, finding none, the court adopts those portions of the Report. Plaintiff's federal claims against Wilkes, Kinder, and Markey in their official capacities are dismissed pursuant to Eleventh Amendment immunity. The § 1983 deliberate indifference claim against Kinder, Wilkes, and Markey is also dismissed.  The individual Defendants are not properly named defendants in claims under the

---

[12] Markey remains subject to the Fourth Cause of Action as to his use of OC spray only.

19

SCTCA, and those claims for use of equipment, wrongful death/survival, and negligent provision of medical care are also dismissed as to Kinder, Wilkes, and Markey. Defendants did not move for summary judgment as to the claims for excessive force against Kinder and Wilkes in their individual capacities as to the chokehold and weight on Decedent's neck and those claims will proceed to trial.

### c. *LCSD Summary Judgment*

The summary judgment motion filed by individual Defendants Kinder, Wilkes, and Markey also encompassed Plaintiff's claims against LCSD. ECF No. 40. The federal claims against LCSD are dismissed pursuant to Eleventh Amendment immunity. See ECF No. 52 at 43 n.26. As to the SCTCA claims against LCSD, the Magistrate Judge recommends dismissal of the claims of negligent hiring, training, and supervision; negligence as to equipment; and grossly negligent provision of medical and lifesaving care. *Id.* at 45-52. LCSD did not move for summary judgment on the gross negligence claim as to wrongful death and survival, as it concedes a genuine issue of material fact exists, and therefore the Report recommends that claim proceed to trial. *Id.* at 50.

Plaintiff does not object to any of the Magistrate Judge's recommendations regarding Defendant LCSD. ECF No. 55. Similarly, Defendant LCSD did not file objections to the Report. Therefore, the court has reviewed this portion of the Report for clear error and, finding none, adopts it. Summary judgment as to the federal claims against LCSD, as well as the SCTCA claims against LCSD for negligent hiring, training, and supervision; negligent use of equipment, and provision of medical and lifesaving care are dismissed with prejudice. Plaintiff's claim for wrongful death under the SCTCA against LCSD will proceed to trial.

### 4. __Conclusion__

After a review of the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and objections filed, the court agrees with the Report's recommendations as to all claims. Accordingly, the court adopts the Report by reference in this Order as supplemented above.[13] Defendant SLED's motion for summary judgment (ECF No. 39) is granted in its entirety. All claims against SLED (First, Second, Third, Fifth, and Sixth Causes of Action) are dismissed with prejudice and it is dismissed from this action.

The Sheriff Defendants' motion (ECF No. 40) is granted in part and denied in part. Summary judgment is granted to LCSD for all claims except the SCTCA claim for wrongful death: the First, Second, Third, and Sixth Causes of Action are dismissed. Defendant Thomas is dismissed without prejudice as he is not named in any causes of action in the Amended Complaint. As for individual Defendants Kinder, Wilkes, and Markey, summary judgment is granted as to the SCTCA claims for negligent use of equipment, wrongful death, negligent provision of medical care because they are not proper defendants under the SCTCA, and as to the deliberate indifference under § 1983 (the Second, Fifth, Sixth and Seventh Causes of Action). Summary judgment is denied on the § 1983 claim for illegal seizure and excessive force (Fourth Cause of Action), except as to Defendant Markey only on the portion of the claim related to the weight placed on Decedent's neck.

---

[13] Although Plaintiff's claims against County of Lexington, South Carolina, were dismissed by stipulation, ECF No. 17, that stipulation was filed prior to the Amended Complaint, which lists Lexington County as a defendant in Causes of Action One, Two, and Three. As there remains no such Defendant, the court strikes County of Lexington from Causes of Action One, Two, and Three.

The following claims will proceed to trial:

1.  The SCTCA wrongful death claim against LCSD (Fifth Cause of Action);

2.  The § 1983 illegal seizure/excessive force claim as to Defendants Kinder, Wilkes, and Markey regarding the initial seizure, Kinder and Wilkes' taser deployments, Markey's use of OC spray, Wilkes' chokehold of Decedent, and Kinder and Wilkes' placement of weight on Decedent's neck (Fourth Cause of Action).

The following schedule shall apply:

1.  Motions in Limine are due: October 12, 2022

2.  Responses to Motions in Limine: October 19, 2022

3.  PreTrial Briefs, Proposed Jury Charges, and Proposed Verdict Form: October 26, 2022[14]

4.  PreTrial Conference: November 2, 2022, at 2:00pm

5.  Jury Selection: December 7, 2022[15]

6.  Jury Trial: December 8-16, 2022

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
September 1, 2022

---

[14] Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the public record and served on opposing parties. No specific information concerning settlement offers or monetary negotiations shall be included.

[15] Attorneys shall meet prior to the jury selection date for the purpose of exchanging and marking all exhibits.